IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| *ex rel.* ANDREW HIRT, | ) | |
| | ) | |
| v. | ) | No. 3:13-0870 |
| | ) | |
| WALGREEN COMPANY. | ) | |

To: The Honorable William J. Haynes, Senior District Judge

# REPORT AND RECOMMENDATION

By Order entered October 31, 2014 (Docket Entry No. 27),[1] this action was referred to the Magistrate Judge under 28 U.S.C. § 636(b)(1)(A) and (B) and Rule 72 of the Federal Rules of Civil Procedure. Presently pending is Defendant's motion to dismiss (DE 44), to which Plaintiff has filed a response (DE 47) and Defendant has filed a reply (DE 51). For the reasons set forth below, the Court recommends that Defendant's motion be GRANTED.

## I. BACKGROUND

Relator Andrew Hirt filed this *qui tam* action against Defendant Walgreen Company ("Walgreens") in August of 2013 alleging violations of 42 U.S.C. § 1320a-7b(b) ("Anti-Kickback Statute") and 31 U.S.C. § 3729, *et seq.* ("False Claims Act"). DE 1. Relator is a resident of Tennessee who owns and operates two pharmacies in the middle Tennessee area. DE 1 at ¶ 4. In

---

[1] Docket Entry references will hereinafter be identified as "DE" followed by the corresponding Docket Entry number.

his initial complaint, Relator alleged that Walgreens has defrauded the United States by offering $25.00 gift cards to Medicare and Medicaid beneficiaries in the middle Tennessee area in an attempt to induce said beneficiaries to switch pharmacies, specifically from Relator's pharmacies to Walgreens pharmacies. DE 1 at ¶¶ 3, 32-33. In response, Walgreens filed a motion to dismiss based on six defenses, including failure to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(6), failure to plead with specificity under Fed. R. Civ. P. 9(b), preclusion under the doctrine of *res judicata*, and preclusion pursuant to three separate provisions of the False Claims Act. DE 24. After Relator filed an amended complaint in which he (1) added a specific time frame in which Walgreens allegedly induced Medicare and Medicaid beneficiaries to switch pharmacies, November 19, 2012 through August 25, 2014, (2) included the name of his competing pharmacy, Andy's Pharmacy, and (3) cited to the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"),[2] DE 29, Walgreens renewed its motion to dismiss on the same six grounds.[3] DE 44.

As an initial matter, the parties dispute a fact that Relator alleges to be true in his amended complaint. Relator alleges that Walgreens entered into a Corporate Integrity Agreement ("CIA") with the Department of Health and Human Services ("HHS") in April of 2012, which he claims resolved two separate *qui tam* lawsuits previously brought against Walgreens, DE 29 at ¶ 10, and that Walgreens subsequently violated this CIA. *Id*. at ¶¶ 30-31. Walgreens confirms that it settled two previous *qui tam* actions with the U.S. government, one filed in the Eastern District of Michigan

---

[2] Relator incorrectly identifies this act as "HIPPA." DE 4 at ¶ 17.

[3] Relator amended his complaint to include a specific time frame and the name of his pharmacy after Walgreens filed its initial motion to dismiss, ostensibly in response to Walgreens's statements in its motion that Relator "alleges no additional facts related to the alleged non-compliance" of Walgreens, and that Relator's complaint "lacks any references to dates or time frames." DE 25 at 8-9.

in 2008 and one filed in the Central District of California in 2009, both of which similarly alleged that Walgreens discounted prescription drugs to Medicare and Medicaid beneficiaries by offering $25.00 gift cards to said beneficiaries.[4] DE 45 at 2-3. Notably, the Michigan complaint dismissed with prejudice the following claims:

> [A]ll civil or monetary claims against Walgreens that the United States has under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; or the common law theories . . . for the following conduct: Walgreens' allegedly offering and/or providing improper inducements, in the form of gift cards, gift checks, and similar promotions, to the beneficiaries of four government health plans . . . to influence the beneficiaries' decision to transfer prescriptions to Walgreens pharmacies between January 1, 2005 and June 11, 2010[.]

DE 45 at 4; DE 45-3 at ¶ 4; DE 45-4. However, contrary to Relator's assertion, Walgreens states that it did not enter into any CIA as a result of these two *qui tam* claims. DE 45 at 9-10. Walgreens notes that it instead entered into a CIA with the Office of the Inspector General ("OIG") in June of 2008, nearly four years before it settled the Michigan and California *qui tam* claims, in an unrelated case involving allegations that Walgreens "substituted different versions of prescribed drugs." *Id*. Walgreens provides a link to the publicly-available CIA that it entered into with the OIG, which shows that the CIA was executed on June 2, 2008, DE 45 at 9, n.7, and attaches to its brief the accompanying Department of Justice ("DOJ") press release that references the CIA. DE 45-6 at 3. Despite this evidence, Relator maintains in his response, without any citation, that Walgreens entered into a CIA as part of its 2012 settlement of the Michigan and California *qui tam* claims. DE 47 at 2-3. Relator fails to respond to Walgreens's claim that there was no CIA entered into as part of the

---

[4] Walgreens emphasizes that the Michigan *qui tam* complaint is unsealed and publicly available, while the California complaint remains under seal. DE 45 at 3; DE 45 at 4, n.3. Walgreens points out, however, that the allegations contained in the California complaint are described in a government press release issued on April 20, 2012. DE 45 at 4, n.3; DE 45-1.

April 2012 settlement, and instead states broadly that the allegations in his amended complaint "all relate to [Walgreens's] actions following this settlement and its breach of the CIA."[5] *Id*. at 5. Regardless, because it is undisputed that Walgreens settled the Michigan and California *qui tam* actions in April of 2012, and Relator argues that Walgreens violated this settlement agreement, it is irrelevant for purposes of the Court's analysis whether a CIA was entered into as part of the 2012 settlement.

Walgreens moves to dismiss Relator's amended complaint based on six grounds: (1) the "public-disclosure" rule of the False Claims Act divests this Court of jurisdiction in light of the government's public resolution of the aforementioned Michigan and California *qui tam* cases against Walgreens, both of which contain the same allegations against Walgreens that Relator presents in the instant case; (2) the "first-to-file" rule of the False Claims Act divests this Court of jurisdiction in light of the filing of the Michigan and California *qui tam* cases; (3) the "government-action" rule of the False Claims Act bars Relator's claim because the Michigan and California *qui tam* cases contained the same allegations; (4) *res judicata* bars the instant action because these claims have already been litigated, pursuant to the resolution of the Michigan and California *qui tam* claims; (5) Relator's allegations fail to meet the specificity requirements of Fed. R. Civ. P. 9(b) in light of Relator's failure to allege an actual false claim; and (6) Relator fails to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). DE 44 at 1.

---

[5] The Court also notes with interest that Relator fails to cite or reference any specific provisions from the alleged 2012 CIA, even though he claims that the CIA "contains provisions specifically designed to ensure [Walgreens's] compliance with Medicare and Medicaid anti-kickback provisions." DE 29 at ¶ 30

4

In response, Relator alleges that none of Walgreens's arguments with respect to the False Claims Act or *res judicata* apply to the instant case because Walgreens continued to engage in the $25.00 gift card operation after the April 2012 resolution of the Michigan and California cases, thereby making the instant action a separate set of allegations. DE 47 at ¶¶ 1-4. Relator also argues that his claims meet the specificity requirement of Fed. R. Civ. P. 9(b), and that his amended complaint properly states claims upon which relief can be granted. *Id*. at ¶¶ 5-6.

## II. STANDARD OF REVIEW

Plaintiffs filing suit under the False Claims Act must meet Fed. R. Civ. P. 9(b)'s heightened pleading standard. *U.S. ex rel. Pogue v. Am. Healthcorp, Inc.*, 977 F. Supp. 1329, 1332 (M.D. Tenn. 1997) (citations omitted). At a minimum, the plaintiff must "allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Id*. (quoting *Coffey v. Foamex L.P.*, 2 F.3d 157, 161-62 (6th Cir. 1993)). The "overarching purpose" of Fed. R. Civ. P. 9(b) is to provide the subject defendant with "fair notice of the claims against [it], in order that [it] may prepare an adequate responsive pleading." *Id*. (citing *Michaels Bldg. Co. v. Ameritrust Co.*, 848 F.2d 674, 679 (6th Cir. 1988)).

With respect to the public disclosure bar of the False Claims Act, 31 U.S.C. § 3730(e)(4)(a) states in relevant part that the court "shall dismiss an action or claim . . . unless opposed by the Government, if substantially the same allegations or transactions as alleged in the action or claim" were publicly disclosed: (1) in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party; (2) in a congressional, Government Accountability Office, or

5

other Federal report, hearing, audit, or investigation; or (3) from the news media, unless the person bringing the action is an "original source" of the information. This section denies jurisdiction in *qui tam* actions when publicly disclosed allegations or transactions form the basis for the complaint. *Dingle v. Bioport Corp.*, 388 F.3d 209, 212 (6th Cir. 2004). An allegation "connotes a conclusory statement implying the existence of provable supporting facts." *Id*. (quoting *United States ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645, 653-54 (D.C. Cir. 1994)). A transaction can be represented by a formula crafted by the D.C. Circuit, which holds:

> If X + Y = Z, Z represents the *allegation* of fraud and X and Y represent its essential elements. In order to disclose the fraudulent *transaction* publicly, the combination of X and Y must be revealed from which readers or listeners may infer Z, i.e., the conclusion that fraud has been committed.

*Id*. (quoting *Quinn*, 14 F.3d at 654). Additionally, *qui tam* actions "are barred only when enough information exists in the public domain to expose the fraudulent transaction (the combination of X and Y), or the allegation of fraud (Z)." *Id*. (quoting *Quinn*, 14 F.3d at 655). An "original source" is an "individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information." 31 U.S.C. § 3730(e)(4)(B). If a *qui tam* relator cannot establish himself as an original source of the information at issue, he has no standing to proceed with the action. *U.S. ex rel. Antoon v. Cleveland Clinic Found.*, 788 F.3d 605, 614 (6th Cir. 2015).

When determining whether the public disclosure bar applies, the Court considers, (1) whether there has been any public disclosure of fraud, and (2) whether the allegations in the instant case are "based upon" the previously disclosed fraud. *U.S. ex rel. Poteet v. Medtronic, Inc.*, 552 F.3d 503,

511 (6th Cir. 2009) (citations omitted). If the answer to either of these is "no," the inquiry is over and the *qui tam* action may proceed. *Id*. (citation omitted). If the answer to each of these questions is "yes," however, the Court must then determine whether the relator nonetheless qualifies as an "original source" under 31 U.S.C. § 3730(e)(4)(B), in which case the *qui tam* action may proceed. *Id*. (citation omitted).

Notably, the Patient Protection and Affordable Care Act of 2010 ("PPACA") amended the public disclosure provision, with the post-PPACA language emphasizing that the disclosure must involve "substantially the same allegations or transactions," while the pre-PPACA language emphasized that the allegations must be "based upon the public disclosure." *U.S. v. Chattanooga-Hamilton Cty. Hosp. Auth.*, 958 F. Supp. 2d 846, 856 (E.D. Tenn. 2013). However, prior to the enactment of the PPACA, the Sixth Circuit held that when "making this determination of whether an action is 'based upon' a public disclosure, a court should look to whether substantial identity exists between the publicly disclosed allegations or transactions and the *qui tam* complaint." *Id*. (quoting *United States ex rel. Jones v. Horizon Healthcare Corp.*, 160 F.3d 326, 332 (6th Cir. 1998)). As such, general case law involving the public disclosure bar is still applicable even if such cases were decided prior to enactment of the PPACA. *Id*.

In determining the sufficiency of a complaint against a motion to dismiss under Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure, the Court must accept as true all facts alleged in the complaint. *Merritt v. Mountain Laurel Chalets, Inc.*, 96 F. Supp. 3d 801, 811 (E.D. Tenn. 2015) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed.2d 929 (2007)); *see also Chesbrough v. VPA, P.C.*, 655 F.3d 461, 467 (6th Cir. 2011) ("Construing the complaint in the light most favorable to the plaintiff and accepting all factual allegations as true, we

determine whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'") (citing *Twombly*, 550 U.S. at 570). The Court is not required, however, to accept as true any proffered legal conclusions. *Merritt*, 96 F. Supp. 3d at 811 (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed.2d 209 (1986)).

### III. ANALYSIS

Walgreens's primary argument for dismissal under the False Claims Act emphasizes that Relator's claims allege a system of fraud that was previously disclosed by way of the aforementioned *qui tam* actions filed in Michigan and California in 2008 and 2009, respectively. DE 45 at 6. Walgreens relies on the complaint filed in the 2008 Michigan case, which states, in pertinent part:[6]

> Pharmacies that provide discounts as incentives for customers to transfer pharmacies leads to customers "pharmacy hopping" with the goal that the pharmacy providing the discount will retain the customers' future business.
>
> Walgreens engaged in providing customers discounts through such means as a Prescription Savings Discount Club, $10 discount checks, $20 discount checks, *$25 gift card coupons*, and $50 coupon brochures.
> . . .
>
> [W]algreens gave discounts on prescription drugs that it provided to Medicare and Medicaid recipients through discount checks, *gift cards* and other coupons.
> . . .
>
> [Walgreens] allowed Medicare and Medicaid recipients to benefit from discounts at the expense of Medicare and Medicaid.

DE 45-2 at 6 (emphasis added). Walgreens also notes that the press release issued by the DOJ in April of 2012, attached to its memorandum, describes the settlement of the fraud allegations made

---

[6] The Court does not discuss the allegations contained in the 2009 California case because the relevant complaint remains under seal, DE 45 at 4, and is unnecessary to the Court's analysis in light of the existence of the unsealed Michigan complaint.

against Walgreens in the Michigan and California lawsuits, which are nearly identical to the fraud alleged by Relator in the instant case. *Id*. at 6-7. The press release describes the alleged fraud in part as follows:

> The settlement resolves allegations that Walgreens offered illegal inducements to beneficiaries of government health care programs, including Medicare, Medicaid . . . in the form of gift cards, gift checks and other similar promotions that are prohibited by law, to transfer their prescriptions to Walgreens pharmacies. The government investigation alleged that Walgreens had offered government health beneficiaries $25 gift cards when they transferred a prescription from another pharmacy to Walgreens.

DE 45-1 at 2. Walgreens also points out that the U.S. government has declined to intervene in this matter, DE 45 at 2; DE 16, although such an election "does not necessarily indicate that . . . the [*qui tam*] case ha[s] no merit." *Thompson v. Quorum Health Res.*, LLC, 485 F. App'x 783, 790 (6th Cir. 2012) (internal citation omitted).

In comparison, Relator's amended complaint alleges that Walgreens "has defrauded the United States through a systemic pattern and practice of offering incentives in the form of $25.00 gift cards to switch pharmacies as an inducement to beneficiaries of the Medicaid and Medicare programs." DE 29 at ¶ 3. Relator does not dispute that its allegations are "similar," but instead argues that the previous settlements between Walgreens and the government in the Michigan and California cases are inapplicable because Walgreens "continued to carry out the same prohibited actions it promised to stop." DE 47 at 3-4. The Court rejects this argument, however, because it goes against the clear language of the False Claims Act and corresponding case law. As noted *supra*, the public disclosure bar specifically precludes *qui tam* actions involving disclosure of fraud that was previously alleged in a "criminal, civil, or administrative hearing, in a congressional, administrative,

9

or Government Accounting Office report, hearing, audit, or investigation, or from the news media." 31 U.S.C. § 3730(e)(4)(A).

Both the 2008 Michigan complaint and the 2012 DOJ press release represent the types of public disclosures contemplated by 31 U.S.C. § 3730(e)(4)(A): the Michigan complaint is a civil complaint, while the DOJ press release represents "news media," as it is information found on a readily accessible public website that constitutes public disclosure. *See U.S., ex rel. Osheroff v. HealthSpring, Inc.*, 938 F. Supp. 2d 724, 733 (M.D. Tenn. 2013) (internal citations omitted); *see also Jones*, 160 F.3d at 331 ("'[P]ublic disclosure' includes filing documents with a court, such as a complaint.") (citation omitted). Additionally, the allegations in the instant case are clearly substantially the same as the allegations of fraud previously disclosed by the Michigan complaint and the DOJ press release, as they all involve Walgreens's issuance of $25.00 gift cards to induce Medicare and Medicaid beneficiaries to transfer their business to Walgreens pharmacies.

Nevertheless, Relator argues that although the allegations in his amended complaint "are similar in that [Walgreens] continued to induce Medicare and Medicaid beneficiaries in the form of $25 gift cards," they are not based upon these prior public disclosures, and that the 2012 settlement between Walgreens and the government "failed to alter or deter [Walgreens's] conduct." DE 47 at 4. This does not, however, save his action from dismissal pursuant to the public disclosure bar. In determining whether an action is based upon a prior public disclosure, the Court must "look to whether substantial identity exists between the publicly disclosed allegations or transactions and the *qui tam* complaint." *Poteet*, 552 F.3d at 514 (quoting *Jones*, 160 F.3d at 332).

In *Poteet*, the Sixth Circuit cited language from several cases indicating that Relator's reliance on Walgreens's alleged violation of its 2012 settlement agreement does not preclude application of the public disclosure bar:

> Not a single circuit has held that a *complete* identity of allegations, even as to time, place, and manner is required to implicate the public disclosure bar; rather all have held, at a minimum, that dismissal is warranted where the plaintiff seeks to pursue a claim, the essence of which is 'derived from' a prior public disclosure.

*Id*. (quoting *United States ex rel. Boothe v. Sun Healthcare Group, Inc.*, 496 F.3d 1169, 1174 (10th Cir. 2007)) (emphasis in original). The *Poteet* Court also noted that the Sixth Circuit's "broad construction of the public disclosure bar . . . precludes individuals who base *any part* of their allegations on publicly disclosed information from bringing a later *qui tam* action." *Id*. (quoting *United States ex rel. McKenzie v. BellSouth Telecommunications, Inc.*, 123 F.3d 935, 940 (6th Cir. 1997)) (emphasis in original). Moreover, an individual "who bases any part of an FCA claim on publicly disclosed information is effectively precluded from asserting that claim in a *qui tam* suit." *Id*. (quoting *U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 646 (6th Cir. 2003)).

Thus, contrary to Relator's arguments, the issue is not whether the allegations in his amended complaint are sufficiently different from those alleged in the Michigan and California cases; the issue is instead whether Relator's amended complaint is "even partly" based on these previous disclosures. *Id*. (citation omitted). The answer to this inquiry is clearly "yes," as the amended complaint asks for relief based on Walgreens's use of the $25.00 gift card system, as well as its alleged violation of its 2012 settlement with the U.S. government with respect to the $25.00 gift card system. DE 29 at ¶¶ 10, 17, 30-38.

Relator claims that his amended complaint is different from the Michigan and California cases because Walgreens continued to engage in the $25.00 gift card scheme after the April 2012 settlement. However, the fact that the arrangements and transactions alleged in Relator's amended complaint occurred subsequent to those mentioned in the Michigan and California public disclosures does not make the public disclosure inapplicable. *Chattanooga-Hamilton Cty. Hosp. Auth.*, 958 F. Supp. 2d at 863. Similar to the instant case, the relator in *Poteet* argued that the defendant in question had changed its methods of committing fraud in response to the government's discovery of fraud attributed to the defendant in a prior complaint, in order to continue committing the fraudulent scheme. *Poteet*, 552 F.3d at 515, n.7. The Sixth Circuit rejected this argument, however, noting that a complaint "based *even partly* upon public disclosures" is jurisdictionally barred. *Id*. (citation omitted) (emphasis in original). Because at least some parts of the relator's complaint were based upon the prior public disclosure, the entire complaint was jurisdictionally barred. *Id*.; *see also Chattanooga-Hamilton Cty. Hosp. Auth.*, 958 F. Supp. 2d at 863 (citing Tenth Circuit's rejection of relator's argument that public disclosure bar did not apply because the disclosures from prior litigation involved earlier time frame than that alleged by relator, and involved different affiliates of the defendant). In the instant case, there is no reasonable dispute that at least some parts of Relator's amended complaint are based on the $25.00 gift card scheme publicly disclosed by both the 2008 Michigan complaint and the 2012 DOJ press release.

Relator must therefore demonstrate that he qualifies as an "original source" under 31 U.S.C. § 3730(e)(4)(B) in order to survive dismissal. Regarding this issue, Relator states the following:

> [Relator] . . . is an original source of information because he suffered financial losses at his pharmacy as a direct and proximate result of [Walgreens's] violations of the False Claims Act by providing illegal incentives to customers of [Relator's]

> pharmacies. [Relator] is also a source of information for the Department of Justice in the Middle District of Tennessee.

DE 47 at 4. However, this argument falls short of the standard required for status as an original source. 31 U.S.C. § 3730(e)(4)(B) states that an original source is:

> an individual who either (i) prior to a public disclosure under subsection (e)(4)(a), has voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based, or (2) who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the Government *before* filing an action under this section.

(Emphasis added).

As Walgreens notes in its brief, Relator has not alleged that he voluntarily provided information to the government regarding the alleged fraud before filing his lawsuit. DE 45 at 10. Relator still failed to allege that he provided such information before filing his lawsuit even after Walgreens specifically asserted in its brief that he failed to do so, instead stating simply that, "Relator is an original source exposing [Walgreens's] conduct." DE 45 at 10; DE 47 at 6. Relator thus failed to allege that it provided this information to the government prior to filing this action on three separate occasions (complaint, amended complaint, and response to Walgreens's motion). Therefore, even accepting all factual allegations set forth by Relator as true, Relator has failed to satisfy a requirement of 31 U.S.C. § 3730(e)(4)(B); *see also Chattanooga-Hamilton Cty. Hosp. Auth.*, 958 F. Supp. 2d at 864 (holding that plaintiff was not an "original source" in part due to her failure to allege that she had provided the relevant information to the government prior to filing action).

Additionally, Relator's allegations "add[] nothing that . . . materially adds to[] the disclosures that had already been made" by way of the Michigan complaint and 2012 DOJ press release.

*Osheroff*, 938 F. Supp. 2d at 735. The two previous *qui tam* cases and the 2012 DOJ press release describing the settlement of such cases clearly demonstrate the government's knowledge of the $25.00 gift card system implemented by Walgreens well before the filing of Relator's complaint in August of 2013. DE 1. Relator states broadly that Walgreens offered "multiple customers of [Relator's pharmacy] $25.00 gift cards" between November of 2012 and August of 2014. DE 29 at ¶ 17. However, Relator fails to identify a specific instance of fraud that would add anything material to the prior disclosure.

This is relevant to another argument set forth by Walgreens, which submits that Relator's amended complaint should be dismissed for failure to meet the heightened pleading requirements of Fed. R. Civ. P. 9(b). DE 45 at 20-23. The minimum pleading standards under Rule 9(b) require that the plaintiff identify: (1) the time, place, and content of the alleged fraud; (2) the fraudulent scheme; (3) the defendant's fraudulent intent; and (4) the resulting injury. *Chesbrough*, 655 F.3d at 467. The Sixth Circuit has also utilized the Eleventh Circuit's more specific pleading requirements for *qui tam* actions, which require that the plaintiff's complaint identify:

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the [government], and (4) what the defendants obtained as a consequence of the fraud.

*Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006) (quoting *United States ex rel. Clausen v. Laboratory Corp. of America, Inc.*, 290 F.3d 1301, 1310 (11th Cir. 2002)).

In the instant case, Relator "does not identify any specific claims that were submitted to the United States . . . and relied [instead] exclusively on conclusory allegations" regarding the $25.00 gift card system, *Id*. (citation omitted), a system which was already known by the government.

14

Relator's amended complaint provides a broad date range that spans nearly two years, the name of a local Walgreens store, and the name of the Relator's pharmacy, all of which were added after Walgreens filed its initial motion to dismiss based partially on Relator's failure to provide dates on which the alleged fraud was committed. However, as Walgreens notes, Relator's amended complaint fails to identify any specific fraudulent claim. DE 45 at 21. The Sixth Circuit has clearly held that "pleading an actual false claim with particularity is an indispensable element of a complaint that alleges a [False Claims Act] violation in compliance with Rule 9(b)." *U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 504 (6th Cir. 2007). This includes a "strict requirement that relators identify actual false claims." *Chesbrough*, 655 F.3d at 472.

Relator argues in his response that disclosing the names of customers "lured away by [Walgreens's] illegal conduct" would violate HIPAA. DE 47 at 8. However, the Court finds the case law submitted by Walgreens persuasive, and agrees that "[o]nce medical records have been appropriately redacted and de-identified, patient privacy concerns dissipate and HIPAA poses no obstacle to the production of the redacted records." *Roth v. Sunrise Senior Living Mgmt., Inc.*, No. 2:11-CV-4567, 2012 WL 748401, at *2 (E.D. Pa. Mar. 8, 2012); *see also Miller v. Allstate Fire & Cas. Ins. Co.*, No. CIV.-07-260, 2009 WL 700142, at *4 (W.D. Pa. Mar. 17, 2009) (holding that submission of redacted documents "would obviate any of the patient privacy interests potentially at stake"). Additionally, as demonstrated by the Michigan *qui tam* complaint, the identity of the individual does not need to be revealed in order to allege a specific instance of fraud purportedly perpetuated by Walgreens. The relator in the Michigan case utilized two-letter initials to describe instances in which patients filled prescriptions from Walgreens pharmacies. DE 45-2 at ¶ 72. Furthermore, the Michigan complaint described numerous instances of the alleged fraud, and

included specific dates and the physicians prescribing the medication being filled. *Id*. Relator's amended complaint provides no such specificity.

Relator makes no argument in its response for "relaxing" the heightened pleading requirements of Rule 9(b), even though Walgreens presented its argument against relaxing the standard in its motion to dismiss. DE 45 at 23. Regardless, the Court finds that Relator's amended complaint does not merit relaxation of Rule 9(b)'s pleading requirements. The Sixth Circuit has stated that the pleading standard could be relaxed "in circumstances where a relator demonstrates that he cannot allege the specifics of actual false claims that in all likelihood exist, and the reason that the relator cannot produce such allegations is not attributable to the conduct of the relator." *Bledsoe*, 501 F.3d at 504, n.12. However, such circumstances have typically involved relators who had "personal knowledge" that fraudulent bills were being submitted. *See, e.g.,U.S. ex rel. Lane v. Murfreesboro Dermatology Clinic, PLC*, No. 4:07-CV-4, 2010 WL 1926131, at *4-5 (E.D. Tenn. May 12, 2010) (finding that plaintiff, as former billing specialist for defendant, had "personal knowledge" of allegedly fraudulent claims); *Hill v. Morehouse Med. Associates, Inc.*, No. 02-14429, 2003 WL 22019936, at *1, 5 (11th Cir. Aug. 15, 2003) (finding that former billing department employee had personal knowledge of allegedly fraudulent bills that were submitted).

Here, Relator owns a competing pharmacy and has no such personal knowledge of Walgreens's billing practice, and has failed to allege facts that "support a strong inference" that fraudulent claims were submitted. *Chesbrough*, 655 F.3d at 471. Relator instead uses the privacy provisions of HIPAA to relieve himself of any duty under Rule 9(b) to allege fraud with specificity. In light of this failure, the Court finds that Relator has failed to meet the pleading standards of Rule 9(b), thus warranting dismissal of his amended complaint.

Although the False Claims Act encourages whistleblowing, it also "abjures parasitic lawsuits, that is, suits in which 'would-be relators merely feed off a previous disclosure of fraud.'" *Osheroff*, 938 F. Supp. 2d at 732 (quoting *Walburn v. Lockheed Martin Corp.*, 431 F.3d 966, 970 (6th Cir. 2005)). Because Relator has failed to even allege that he provided the information at issue to the government prior to filing this action, and because the allegations in his complaint fail to materially add anything to the public disclosures contained in the Michigan and California cases, his claim should be dismissed pursuant to the public disclosure bar contained in the False Claims Act. *See Chattanooga-Hamilton Cty. Hosp. Auth.*, 958 F. Supp. 2d at 864; *see also Antoon*, 788 F.3d at 614 ("After a public disclosure of the basis of the lawsuit, if a *qui tam* relator cannot establish himself as an original source of the information, he has no standing to proceed with the action."). Relator's amended complaint should also be dismissed due to his failure to meet the heightened pleading standards of Fed. R. Civ. P. 9(b), as discussed *supra*. Because Relator's *qui tam* claim is determined to be precluded by the public disclosure bar and fails to meet the heightened pleading requirements of Fed. R. Civ. P. 9(b), the Court need not consider Walgreens's additional arguments for dismissal. *See Poteet*, 552 F.3d at 515.

## IV. RECOMMENDATION

For the above stated reasons, the Court respectfully RECOMMENDS that Walgreens's motion to dismiss (DE 44) be GRANTED.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made.

Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

                Respectfully Submitted,

                BARBARA D. HOLMES
                United States Magistrate Judge